9/28/2017 2:40 PM
Chris Daniel - District Clerk Harris County
Envelope No. 19737477
By: Rhonda Momon
Filed: 9/28/2017 2:40 PM

EXHIBIT " -

CAUSE NO. _____

| | | |
|---|---|---|
| AMERICAN CAPITAL FUNDING CORP. | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY | § § § § | |
| *Defendant* | § § § | ____ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION
AND REQUESTS FOR DISCLOSURE**

TO THE HONORABLE COURT:

Plaintiff American Capital Funding Corp. ("AMCAP") files this its Original Petition, complaining of Defendant Fidelity National Title Insurance Company, Inc. ("Fidelity") and in support would show the Court as follows:

**I.
PARTIES**

1. Plaintiff AMCAP is a Texas Corporation with its principal place of business located at 9999 Bellaire Blvd., Suite 700, Houston, Harris County Texas 77036.

2. Defendant Fidelity is a Florida title insurance company, doing business in Houston, Harris County, Texas and may be served with process by serving its Attorney for Service, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

**II.
DISCOVERY LEVEL**

3. Plaintiff requests a Level Two (2) Discovery Control Plan, pursuant to Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE. Pursuant to Rule 47, Plaintiff affirmatively pleads that it seeks monetary relief within the jurisdictional limits of the Court and that the monetary relief sought is over $1,000,000.

### III.
### VENUE

4. This action accrued in Harris County, Texas in that the causes of action asserted in this suit arose from, or are connected to, the purposeful acts of Defendant, Fidelity in Harris County. Accordingly, venue lies in Harris County pursuant to §15.001 *et. seq*. of the TEXAS CIVIL PRACTICES & REMEDIES CODE.

### IV.
### BACKGROUND FACTS

5. AMCAP is a mortgage lender. AMCAP loaned R.C. Hospitality ("RC") $2,250,000.00 (the "AMCAP Loan") secured by a deed of Trust on 1.498 acres of improved property ('the Hotel Property") in Jefferson County, Texas. The AMCAP Loan was intended to pay off the prior lenders, Lowry Donkey Farm LP and French Kingston Investment, Ltd. (jointly "Lowry") and to advance funds to complete refurbishing of the hotel that was located on the Hotel Property.

6. On or about March 17, 2011, AMCAP funded the AMCAP Loan to RC and paid off the indebtedness owing from RC to Lowry. A deed of trust securing the loan from AMCAP to RC was recorded in the real property records of Jefferson County on April 11, 2011.

7. RC failed to timely make the payments on the AMCAP Loan, and on August 8, 2012, AMCAP foreclosed its lien on the Hotel Property. Subsequently, AMCAP sold the Hotel Property to Crown Hospitality, Inc. ("Crown") for $2,550,000.00

secured by a deed of trust on the Hotel Property. Thereafter, AMCAP was sued by Chimney Joint Venture ("Chimney"), which claimed an equitable lien on the Hotel Property.

8. Chimney had made a two-million-dollar loan to RC on or about November 5, 2010 to allow RC to acquire the Hotel Property. An unlicensed title company that was affiliated with RC closed the loan. The unlicensed title company failed to record the deed of trust in favor of Chimney. In fact, RC did not acquire title to the Hotel Property until January 4, 2011 and was therefore unable to give a valid deed of trust in favor of Chimney on November 5, 2010.

9. RC repeated its borrowing scam just 12 days later when it obtained the loan from Lowry. Lowry loaned RC 2.3 million dollars on or about November 17, 2010 ostensibly to acquire the Hotel Property. This loan was also to be secured by the Hotel Property. Lowry funded the loan proceeds to Chicago Title to hold in escrow. Unbeknownst to Lowry, a relative of one of RC's owners worked for Chicago Title and she deposited the funds in an escrow account not controlled by Chicago Title.

10. A settlement statement was prepared showing Chicago Title as the closing agent and included a $400,000.00 construction reserve that was to be paid to Lowry. A Deed of Trust from RC in favor of Lowry was to be recorded immediately after closing (although RC did not acquire the Hotel Property with the proceeds of the Lowry Loan and was unable to give a valid deed of trust at closing).

11. In December 2010, Lowry had still not been paid the construction reserve and it is at that point the Lowry discovered the fraud that had been perpetrated by RC in connection with the loan. Lowry learned that RC had not purchased the property as represented; instead, RC had used the proceeds of the Lowry loan to purchase an

approximate three million dollar ($3,000,000) note from Sterling Bank which was secured by the Hotel Property.  RC foreclosed on the Hotel property on January 4, 2011 thereby acquiring a foreclosure deed establishing its title to the Hotel Property for the first time.

12.	When Lowry learned of the fraud perpetrated by RC, Lowry filed a lawsuit against RC and Sayed R. Mohiuddin in the 136th District Court of Jefferson County.  Lowry also filed a Notice of Lis Pendens referencing the lawsuit by style and cause number.  The lis pendens also described the Hotel Property.  The lis pendens was filed in the real property records of Jefferson County on January 12, 2011 and clearly states that the lawsuit includes a request for imposition of a deed of trust lien and/or a constructive trust on the Hotel Property.

13.	On August 8, 2012, AMCAP foreclosed on the RC Deed of Trust on the Hotel Property.  At the time of the foreclosure, the proceeds of the AMCAP loan had been used to satisfied the lien held by Lowry; however, the lis pendens had not been released.  AMCAP was not aware of the lis pendens that had been filed by Lowry, or of the allegations of fraud that Lowry had made against RC.

14.	AMCAP subsequently sold the Hotel Property to Crown on September 6, 2012.  AMCAP financed the purchase of the property by Crown.  Fidelity issued a Loan Policy of Title Insurance to insure AMCAP's ability to pass good title to Crown.  AMCAP was aware that some of the owners of RC were also owners of Crown; however, at the time it sold the Hotel Property to Crown, it was unaware that RC had defrauded Lowry and Chimney in connection with alleged purchases of the Hotel Property.

15. Had AMCAP been aware of the lis pendens and the allegations of fraud that Lowry made against RC, AMCAP would not have agreed to finance the sale of the Hotel Property to Crown.

16. After AMCAP foreclosed on the Hotel Property and sold it to Crown, Chimney brought suit against AMCAP, RC Hospitality, Inc., Crown Hospitality Inc. and Vikram S. Cheema seeking an equitable lien on the Hotel property based on RC's fraud in connection with the loan from Chimney and what Chimney has alleged as fraud in connection with AMCAP's foreclosure and subsequent sale of the property from AMCAP to Crown.

## V.
## CAUSES OF ACTION

A.  **NEGLIGENT MISREPRESENTATION**

17. At the time AMCAP extended the loan to Crown, it had no knowledge that RC had acquired ownership of the Hotel Property by its fraud against Lowry. Fidelity insured title in AMCAP even though there was a lis pendens on file referencing the lawsuit brought by Lowry against RC. Had AMCAP been aware of the fraud allegations that Lowry made against RC, AMCAP would not have financed the loan to Crown to allow them to purchase the property.

18. Crown subsequently defaulted on its loan obligations and as a result, AMCAP foreclosed its lien and holds title to the Hotel Property.

19. After AMCAP sold the property to Crown, AMCAP was been named in litigation by Chimney claiming an equitable lien on the Hotel Property and challenging AMCAP's ownership.

B.  **BREACH OF FIDUCIARY DUTY**

20. Fidelity acted in its role as a title insurer and as an escrow agent and closer of the transaction during the closings in which AMCAP financed the purchase of the Hotel Property by Crown.

21. Fidelity had previously examined the real property records concerning the Hotel Property and was actually or constructively aware that there was a lis pendens on the property and a lawsuit concerning the fraud of RC in acquiring a loan ostensibly for the purchase of the property at the time of the closing. Had Fidelity acted prudently in performing its duties in connection with issuing its title policy, AMCAP would not have extended the loan to Crown based on its relationship with RC.

22. Fidelity owed AMCAP a fiduciary duty to disclose to AMCAP its knowledge regarding the status of the title to the Hotel Property. Fidelity breached its fiduciary duties to AMCAP and the breaches were the proximate cause of damages to AMCAP.

23. For breaches of fiduciary duty, AMCAP seeks exemplary damages against Defendant Fidelity.

C.   **VIOLATION OF ARTICLE 21.21 OF THE TEXAS INSURANCE CODE**

24. AMCAP incorporates all the foregoing allegations as if fully set forth herein.

25. AMCAP is an insured under the Loan Policy of Title Insurance issued by Fidelity. AMCAP is a consumer, as that term is defined in the Texas Deceptive Trade Practices Act and the Texas Insurance Code. Fidelity has breached the duty of good faith and fair dealing, as found in the Texas Deceptive Trade Practices Act, Section 17.46 *et seq.*, as well as the Texas Insurance Code, Section 21.21, and the common law. Fidelity failed to timely accept coverage, failed to timely investigate the claims, failed to timely

pay the claims when liability was reasonably clear, made false and misleading statements regarding the insurance policy, and failed to honor its representations and warranties. Fidelity's conduct was unconscionable. AMCAP seeks additional punitive damages as a result of such unconscionable conduct.

26.     Fidelity has violated and continues to violate Art. 21.21 of the TEXAS INSURANCE Code by engaging in unfair settlement practices in the following manners:

   a.     Misrepresenting to AMCAP that Fidelity's obligations under the policy ceased when Chimney filed suit alleging, without any supporting evidence, that AMCAP had participated in a fraud to defeat Chimney's lien priority;

   b.     Failing to provide a defense to the Chimney lawsuit;

   c.     Misrepresenting an insurance policy by making an untrue statement of material fact and/or by failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made and making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

27.     AMCAP has sustained actual damages as a result of Fidelity engaging in an act or practice declared in Section 4 of Article 21.21 to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance.

28.     AMCAP alleges that the acts of Fidelity comprising violations of Article 21.21 were committed knowingly and intentionally as those terms are defined and/or used in Article 21.21.

29.     For the damages suffered by AMCAP as a result of the violations of Article 21.21 of the Texas Insurance Code by Fidelity, AMCAP, after any required election of remedies, seek recovery of their actual damages, reasonable and necessary

attorneys' fees, costs of court, pre- and post-judgment interest as allowed by law, and additional damages of two times actual damages as provided in Subchapter E, Chapter 17, Business & Commerce Code.

### D.     DECEPTIVE TRADE PRACTICES

30.    AMCAP incorporates all the foregoing factual allegations as though fully set forth herein.

31.    AMCAP is a consumer under the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA") as that term is defined in the Act.

32.    The acts which form the bases for AMCAP's DTPA claim are completion and delivery of the title commitment and documents presented to AMCAP, at the closing violated the deceptive trade practices act (Tex. Bus. & COMM. CODE §17.01 et seq.) in that Fidelity: represented that the goods and services (i.e., insurance coverage, closing services and claims handling) had characteristics, uses, benefits that they did not have (§17.46(b)(5)); represented that goods or services were of a particular standard, quality, or grade, when they were of another (§17.46(b)(7)); represented that the insurance policies and other documents including the Deed of Trust from RC, the foreclosure of which passed title to AMCAP, conferred or involved rights, remedies, or obligations which it did not have or involved (§17.46(b)(12)); and failed to disclose information concerning the policy and adjustment procedures which were known at the time of the transaction and such failure to disclose such information was intended to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed (§17.46(b)23)).

33.    The acts or inactions of Fidelity, which constituted the deceptive trade practices of Fidelity, were "unconscionable" as that term is defined in the DTPA and

knowing as that term is defined in the DTPA and were relied on by Plaintiff to its detriment.

    a.    Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

    b.    Refusing to pay a claim without conducting a reasonable investigation with respect to the claim; and

    c.    Misrepresenting an insurance policy by making an untrue statement of material fact and/or by failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made and making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

    d.    Claiming as a defense that AMCAP never filed a claim when there is no obligation under the contract to file a claim and the specific regulations of Texas Department of Insurance provide that a lawsuit satisfies the notice of claim requirements in the Policy.

34. The acts or inactions of Fidelity, which constituted the deceptive trade practices of Fidelity, were "unconscionable" as that term is defined in the DTPA and knowing as that term is defined in the DTPA and were relied on by AMCAP to its detriment.

**E.    BREACH OF CONTRACT/SPECIFIC PERFORMANCE**

35.    The title insurance policy between AMCAP and Fidelity is a contract.

36.    Fidelity breached the contract by failing to provide AMCAP s defense to the claims of Chimney.

37. AMCAP requests specific performance of Fidelity's duty to provide a defense to the Chimney lawsuit.

38. As a result of the breach of the contract by Fidelity, AMCAP has suffered actual damage, including cost of defense and additional damages in the event of a judgment against it in the Chimney lawsuit imposing a constructive trust on the Hotel Property.

39. As a result of the breach of the contract by Fidelity, AMCAP has had to employ an attorney to prosecute their claims against Fidelity.  AMCAP seeks to recover its attorneys' fees incurred in this matter.  Fidelity's breach was done in bad faith

## VI.
## JURY DEMAND

40. Plaintiff request a jury trial on this matter.

## VII.
## REQUESTS FOR DISCLOSURE

41. Under Texas Rule of Civil Procedure 194, AMCAP requests that Defendant Fidelity disclose within 30 days of service of this request the information or materials described in Rule 194.2(a)-(1).

## VII.
## REQUEST FOR RELIEF

American Capital Funding Corporation requests that, after trial by jury of all disputed fact issues and after any required election of remedies, the Court enter judgment against the Fidelity National Title Insurance Company for the actual damages in maximum amount allowed by law, punitive damages, statutory damages, pre- and post-judgment interest, attorney fees, costs and all other relief, both general and special, legal and equitable, to which they may justly be entitled.

Respectfully submitted,

GORANSONKING, PLLC

By: */s/ Mark D. Goranson*
Mark D. Goranson*
Texas State Bar No. 08192950
1415 N. Loop W, Suite 1100
Houston, Texas 77008
713.526.9200- Telephone
713.526.9202- Facsimile
goranson@goransonking.com

ATTORNEYS FOR AMERICAN
CAPITAL FUNDING CORPORATION